# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

516
KA 09-02341
PRESENT: CENTRA, J.P., PERADOTTO, CARNI, LINDLEY, AND WHALEN, JJ.

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                                         MEMORANDUM AND ORDER

CHRISTOPHER A. NICHOLSON, ALSO KNOWN AS JOHN DOE,
DEFENDANT-APPELLANT.
(APPEAL NO. 1.)

DAVISON LAW OFFICE PLLC, CANANDAIGUA (MARY P. DAVISON OF COUNSEL), FOR
DEFENDANT-APPELLANT.

CHRISTOPHER A. NICHOLSON, DEFENDANT-APPELLANT PRO SE.

SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (GEOFFREY KAEUPER OF
COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Supreme Court, Monroe County (Francis A. Affronti, J.), rendered September 22, 2009. The judgment convicted defendant, upon a jury verdict, of course of sexual conduct against a child in the first degree.

It is hereby ORDERED that the appeal from the judgment insofar as it imposed sentence is dismissed and the judgment is otherwise affirmed.

Memorandum: In appeal No. 1, defendant appeals from a judgment convicting him upon a jury verdict of course of sexual conduct against a child in the first degree (Penal Law § 130.75 [former (a)]) and, in appeal No. 2, defendant appeals from the resentence. We reject defendant's contention in appeal No. 1 that Supreme Court erred in allowing the victim and her mother to testify that defendant had threatened the victim and physically abused the victim and her brother. That evidence was relevant to explain the victim's delay in reporting the abuse (*see People v Westbrooks*, 90 AD3d 1536, 1537, *lv denied* 18 NY3d 963; *People v Bennett*, 52 AD3d 1185, 1187, *lv denied* 11 NY3d 734; *see also People v Rivers*, 82 AD3d 1623, 1623, *lv denied* 17 NY3d 904). We further conclude that the record establishes that the court balanced the probative value of such evidence against its potential for prejudice (*see People v Holmes*, 104 AD3d 1288, 1290, *lv denied* 22 NY3d 1041). Defendant failed to preserve for our review his contention that the court erred in failing to issue a limiting instruction with respect to that evidence, and we decline to exercise our power to review it as a matter of discretion in the interest of justice (*see Westbrooks*, 90 AD3d at 1537). We reject defendant's

further contention that the failure to object to the absence of the limiting instruction rendered counsel ineffective (*see People v Williams*, 107 AD3d 1516, 1516-1517, *lv denied* 21 NY3d 1047).

Defendant next contends in appeal No. 1 that the court erred in admitting the testimony of an expert with respect to child sexual abuse accomodation syndrome (CSAAS) because the issue of delayed victim disclosure was not beyond the ken of the jurors in this case. It is well settled that "[e]xpert testimony concerning CSAAS is admissible to assist the jury in understanding the unusual conduct of victims of child sexual abuse where, as here, the testimony is general in nature and does not attempt to impermissibly prove that the charged crimes occurred" (*People v Gayden*, 107 AD3d 1428, 1428, *lv denied* 22 NY3d 1138 [internal quotation marks omitted]; *see People v Spicola*, 16 NY3d 441, 465, *cert denied* ___ US ___, 132 S Ct 400; *People v Ennis*, 107 AD3d 1617, 1619, *lv denied* 22 NY3d 1040).  Contrary to defendant's contention, the record of the voir dire does not establish that all the sworn jurors were aware of and understood the reasons for delayed disclosure by victims of sexual abuse and, moreover, the CSAAS expert also testified concerning unusual conduct of victims of child sexual abuse other than delayed disclosure.

Defendant further contends in appeal No. 1 that the court erred in allowing the People to call a rebuttal witness who testified concerning collateral matters.  Contrary to defendant's contention, the rebuttal witness was properly called to give testimony that was relevant to the defense witness's bias or motive to fabricate, which is not collateral (*see People v Anonymous*, 96 NY2d 839, 840).  The defense witness was defendant's former girlfriend, and the rebuttal witness was defendant's ex-wife, who married defendant after he and the defense witness ended their romantic relationship.  In her cross-examination of the defense witness, the prosecutor attempted to show that defendant and the defense witness were romantically involved at the time of the trial, but the defense witness would admit only that she and defendant were friends, and claimed that she and defendant had been friends "all along," i.e., they were friends even when defendant and the rebuttal witness were married.  The prosecutor informed the court that she wanted to call the rebuttal witness to rebut the defense witness's testimony that she and defendant were "friends this entire time."  We disagree with our dissenting colleagues that the rebuttal witness should not have been allowed to testify.  Reading the prosecutor's colloquy with the court on this issue, together with her cross-examination of the defense witness, we conclude that the purpose of calling the rebuttal witness was to show that defendant and the defense witness were romantically involved at the time of the trial, which the prosecutor believed could be inferred if the defense witness and defendant had *not* been friends when he was married to the rebuttal witness.

We also disagree with our dissenting colleagues that our affirmance of the trial court's ruling violates *People v Concepcion* (17 NY3d 192).  The Court of Appeals has " 'construed CPL 470.15 (1) as a legislative restriction on the Appellate Division's power to review issues either decided in an appellant's favor, or not ruled

upon, by the trial court' " (*id*. at 195).  Contrary to the position of
the dissent, we are not affirming on a ground that is different from
that determined by the court.  The court allowed the rebuttal witness
to testify for the "limited purpose" of whether the defense witness
and defendant were friends, and we conclude that the court's
determination was proper.  We simply differ from the dissent in our
interpretation of the meaning of the rebuttal witness's testimony
tending to show that the defense witness and defendant were not
friends after defendant married the rebuttal witness.  The rebuttal
witness testified that defendant had contact with the defense witness
in 2003 but, after the rebuttal witness indicated to defendant that
she was not pleased with that contact between them, she was not aware
of any further contact between defendant and the defense witness.
Whereas the dissent infers nothing from that testimony other than that
defendant and the defense witness were not friends after 2003, we
conclude that a permissible inference from that testimony was that,
despite her testimony, the defense witness never lost her romantic
feelings for defendant, even at the time of trial.

Viewing the evidence in light of the elements of the crime of
course of sexual conduct against a child as charged to the jury (*see
People v Danielson*, 9 NY3d 342, 349), we reject defendant's contention
in his pro se supplemental brief that the verdict is against the
weight of the evidence in appeal No. 1 (*see generally People v
Bleakley*, 69 NY2d 490, 495).  Defendant also contends in his pro se
supplemental brief that he received ineffective assistance of counsel
in appeal No. 1.  Inasmuch as we conclude that defendant was not
denied a fair trial by any alleged instances of prosecutorial
misconduct on summation, defense counsel's failure to object to those
comments does not constitute ineffective assistance of counsel (*see
People v Lyon*, 77 AD3d 1338, 1339, *lv denied* 15 NY3d 954).  In
addition, defense counsel was not ineffective in failing to call a
witness to rebut the testimony of the CSAAS expert (*see People v
Wallace*, 60 AD3d 1268, 1270, *lv denied* 12 NY3d 922).  Defendant's
contention that defense counsel failed to obtain certain documentary
evidence is based on matters outside the record and must be raised by
way of a motion pursuant to CPL article 440 (*see People v Gerald*, 103
AD3d 1249, 1250).  Finally, defendant's " '[s]peculation that a more
vigorous cross-examination might have [undermined the credibility of a
witness] does not establish ineffectiveness of counsel' " (*People v
Williams*, 110 AD3d 1458, 1459-1460, *lv denied* 22 NY3d 1160).

Contrary to defendant's contention in appeal No. 2, the
resentence is not unduly harsh or severe.  We agree with defendant,
however, that the court erred in failing to modify the duration of the
order of protection upon the resentence.  Although defendant failed to
preserve that contention for our review (*see People v Nieves*, 2 NY3d
310, 315-317; *People v Tidd* [appeal No. 2], 81 AD3d 1405, 1406), we
nevertheless exercise our power to review it as a matter of discretion
in the interest of justice (*see* CPL 470.15 [3] [c]).  We therefore
modify the resentence in appeal No. 2 by amending the order of
protection, and we remit the matter to Supreme Court to determine the
jail time credit to which defendant is entitled and to specify in the

order of protection an expiration date in accordance with the version of CPL 530.12 (former [5] [ii]) in effect when the judgment was rendered on September 22, 2009 (*see People v Jackson*, 85 AD3d 1697, 1699, *lv denied* 17 NY3d 817; *Tidd*, 81 AD3d at 1406; *People v Harris*, 50 AD3d 1608, 1609, *lv denied* 10 NY3d 959).

All concur except CARNI and LINDLEY, JJ., who dissent and vote to reverse in accordance with the following Memorandum: We respectfully dissent. We would reverse the judgment of conviction in appeal No. 1 and grant defendant a new trial, and vacate the resentence in appeal No. 2. In our view, Supreme Court erred in allowing the People to call a rebuttal witness whose testimony related solely to collateral matters. "It is well established that the party who is cross-examining a witness cannot introduce extrinsic documentary evidence or call other witnesses to contradict a witness' answers concerning collateral matters solely for the purpose of impeaching that witness' credibility" (*People v Pavao*, 59 NY2d 282, 288-289; *see People v Hanley*, 5 NY3d 108, 112). At the same time, however, "extrinsic proof tending to establish a reason to fabricate is never collateral and may not be excluded on that ground" (*People v Hudy*, 73 NY2d 40, 56). Thus, the People may call a rebuttal witness to provide testimony that is relevant to a defense witness's bias or motive to fabricate, which is not collateral (*see People v Anonymous*, 96 NY2d 839, 840).

Here, the People's rebuttal witness was defendant's ex-wife, who was called to rebut certain testimony offered by defendant's sole witness, a former girlfriend who dated defendant from 1995 to 2003. The defense witness testified that she had a "wonderful" relationship with defendant's children — the victim and her brother — and that she never witnessed defendant engage in any violent acts toward them. On cross-examination, the defense witness acknowledged that she had remained defendant's friend and visited him frequently while he was in jail pending trial. She also acknowledged that she did not want to see anything bad happen to defendant.

Following the defense witness's testimony, the People announced their intention to call the ex-wife as a rebuttal witness. Defense counsel objected and asked for an offer of proof. When the court asked the prosecutor what she expected from the ex-wife's testimony, the prosecutor stated, "The [defense witness] testified specifically that she has been friends with the defendant the entire time, including the time after she broke up with him, and he was with [the rebuttal witness] up to the present date. I am calling the witness to rebut that statement that they were friends this entire time, because that's not correct." The court then asked, "That is the limited purpose, that they were or were not friends during that period; is that what you are saying?" The prosecutor responded, "That's right." The court allowed the rebuttal witness to testify over defendant's objection. She proceeded to testify that she and defendant met in 2003, married in 2005 and separated in 2008. The rebuttal witness further testified that, to her knowledge, defendant did not have any contact with the defense witness after 2003.

We conclude that the court erred in allowing the rebuttal witness to testify because the limited purpose of her testimony, as stated by the prosecutor, was to rebut the defense witness's testimony that she remained friends with defendant after they broke up in 2003.  The fact that the defense witness was defendant's friend was relevant to show that she may have had a bias for testifying on his behalf.  The defense witness freely acknowledged, however, that she was defendant's friend at the time of trial, and it was that very testimony that the prosecutor sought to rebut.  The rebuttal witness's testimony—that the defense witness did not have contact with defendant after 2003—served only to show that the defense witness was not being truthful when she testified that she and defendant remained friends.  In our view, that constitutes impermissible impeachment testimony on a collateral matter.  The fact that the defense witness was not one of defendant's friends while he was married to the rebuttal witness, as the rebuttal witness testified, does not show that the defense witness was biased in favor of defendant.  In fact, it tends to show the opposite.

We cannot agree with the majority that "the purpose of calling the rebuttal witness was to show that defendant and the defense witness were romantically involved at the time of trial."  As noted, the prosecutor stated that her purpose in calling the rebuttal witness was to show that the defense witness and defendant were not friends "that entire time," as the defense witness had testified; the prosecutor did not say anything about seeking to show that the defense witness was romantically involved with defendant at the time of trial, and the rebuttal witness did not testify to that effect or even insinuate as much.  In any event, the court's ruling in allowing the rebuttal witness to testify was not based on the ground relied upon by the majority, and we therefore may not affirm on that basis (*see* CPL 470.15 [1]; *People v Concepcion*, 17 NY3d 192, 196; *People v LaFontaine*, 92 NY2d 470, 474).

We agree with the People to the extent that they argue that defendant was not prejudiced by the rebuttal witness's testimony.  In fact, we are comfortable concluding that there is no "significant probability . . . that the jury would have acquitted the defendant had it not been for the error" (*People v Crimmins*, 36 NY2d 230, 242; *see People v Arafet*, 13 NY3d 460, 468).  In order for the harmless error analysis to apply in the first instance, however, the proof of guilt must be "overwhelming" (*Crimmins*, 36 NY2d at 241; *see Arafet*, 13 NY3d at 468).  As the Court wrote in *Crimmins*, "unless the proof of the defendant's guilt, without reference to the error, is overwhelming, there is no occasion for consideration of any doctrine of harmless error.  That is, every error of law (save, perhaps, one of sheerest technicality) is, *ipso facto*, deemed to be prejudicial and to require a reversal, unless that error can be found to have been rendered harmless by the weight and the nature of the other proof" (*id.* at 241).  In our view, the error here cannot be characterized as "one of sheer technicality" (*id.*).  Because this case turned largely on the testimony of the victim, who did not report the crimes until more than eight years after they occurred, it cannot be said that the proof of guilt is overwhelming.  We are thus constrained to conclude that defendant is entitled to a new trial notwithstanding that the jury

almost certainly would have convicted him even without the rather innocuous rebuttal testimony.

Finally, we agree with the majority that none of defendant's remaining contentions in appeal No. 1 has merit.